IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 3:06-cr-0006-01 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **DEFENDANT** |
| DONALD DURAY BROWN, et al., | ) | **DONALD** |
| | ) | **BROWN'S** |
| Defendants. | ) | **SENTENCING** |
| _____ | ) | **MEMORANDUM** |

No excludable delay is expected to occur as
a result of the filing of the present document.

Donald Duray Brown, 43, pled guilty to one count of drug conspiracy, in

violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c) (Count 1 of the indictment)

The mandatory minimum penalty on that conviction is ten years and the

maximum penalty is life imprisonment.

Mr. Brown's U.S. Sentencing Guideline Range is calculated, in the final PSR,

at 135 to 168 months.  Final PSR, p. 19, ¶ 100.  The probation officer recommended

that Mr. Brown be sentenced to 150 months.

### 1.    Objections To The Draft PSR

Mr. Brown made several objections to the draft PSR.  First, Mr. Brown

objected to his being deemed a participant in the smuggling by co-defendant Wilson

of a certain quantity of powder cocaine (497.7g) on or about January 8, 2006.  Mr.

Brown withdraws that objection.

Title 21 U.S.C. Section 841(b)(1)(A) prescribes a 10-year minimum penalty for any person convicted of possession with intent to distribute either five or more kilograms of powder cocaine or 50 grams or more of a substance containing cocaine base.

Mr. Brown, who is African-American, objected to his sentence being enhanced under the so-called "base-to-powder ratio" in 21 U.S.C. 841(b)(1)(a) because he distributed approximately 193.5 grams of cocaine base, versus powder cocaine, to a cooperating source (CS) on February 5, 2005 in Anchorage.  Mr. Brown's objection ran to the fact that the base-powder distinction is not one which is rationally based and which violates the Equal Protection Clause.

As noted above there is contrary authority.  The Ninth Circuit and the Supreme Court rejected a similar argument in United States v. Jackson, 84 F.3d 1154, 1160-61 (9th Cir.), cert. denied, 117 S.Ct. 445 (1996).  In Jackson the Ninth Circuit rejected the argument that the 100-t0-1 ratio of base-to-powder was not based upon a rational distinction.  Id., 84 F.3d at 1161.  Jackson had presented expert evidence that "cocaine" and "cocaine base" were chemically identical.  The Government did not dispute that contention.  Instead, the Government argued that the two substances were not "legislatively synonymous" and that Congress intended "cocaine base" to refer to "cocaine that can be smoked, unlike cocaine hydrochloride."  Id. at 416.

The Shaw court held that as long as cocaine and cocaine base, as those terms were understood by Congress, are "objectively distinguishable," the statute is not vague.  Id.

Mr. Brown respectfully suggests that those cases are wrongly decided.  The base-powder distinction rests on rationales which advert not to the rational and logical  processes of the natural sciences but, rather, cloudy political judgments by the Congress which, factually, are not sustainable, and, legally, operate to largely punish more severely members of the African-American minority.

According to statistics compiled by the U.S. Sentencing Commission, in the year 2000, 84.7% of crack cases were brought against African-Americans, 9% against Hispanics and only 5.6% against Whites. Caucasians, however, comprised a much higher proportion of crack users: 2.4 million Caucasians (64.4%), 990,000 African Americans (26.6%), and 348,000 Hispanics (9.2%).[ii]   For powder cocaine, the disparities are somewhat different.  Of all powder cases brought, 30.5% were against African-Americans, 50.8% were against Hispanics and 17.8% were against whites.  U.S.S.C. Sourcebook 2000, Figure 27.

As noted in the proceedings of the U.S. Sentencing Commission when it examined the base-powder distinction in 2000, the weight of scientific evidence is that the disparate treatment in sentencing between crack and powder cocaine users is not justified on the basis of the greater alleged addictiveness of crack.

Dr. Deborah Frank, who conducted a 10-year study of the developmental and behavioral outcomes of children exposed to powder and base cocaine in utero, testified that "the biologic thumbprints of exposure to these substances" are identical. Testimony of Dr. Deborah Frank before U.S.S.C., February 25, 2002.

As Dr. Frank pointed out in her testimony, while there are differences in the manner in which the body absorbs base versus powder cocaine, cocaine hydrochloride (powder) can easily be transformed into crack by combining it with baking soda and heat.  Therefore it is irrational to apply a stiffer penalty between cocaine which is directly sold as crack, and cocaine which is sold in powder form but which can be treated by the consumer and easily transformed into crack.

If, as <u>Shaw</u> holds, the legislatively drawn distinction justifying drastically higher penalties for distributing cocaine base is the fact that base can be smoked, then that distinction fails if it can be shown that powder cocaine can also be smoked.   In fact, both forms of cocaine, powder and base, are easily and readily convertible, and converted, by consumers, into other forms, which may be more convenient or satisfactory for personal use.

There is little doubt that the base-powder distinction has disproportionate impact upon African-American defendants convicted of possessing and/or distributing cocaine.  Donald Brown is African-American.  The final PSR seeks to apply that distinction and its corresponding enhancement for distributing cocaine base to Mr.

Brown. He objects to his sentence being enhanced based upon the base-powder distinction and ratio.

Mr. Brown also objected to his being assigned a criminal history category level III instead of a level II. Mr. Brown's conviction for negligent driving over-states the seriousness of his criminal history.

In some cases decided by this court it has been held that conviction for a minor or misdemeanor driving offense overstates the seriousness of a defendant's criminal history. Mr. Brown's criminal history, read in context and balanced with all other relevant sentencing factors, should be reduced to a level II.

### 2.    Relevant Sentencing Factors Under 18 U.S.C. § 3553.

The nature and circumstances of Mr. Brown's offense are that he conspired, for a relatively brief period and under personal exigent circumstances, to sell cocaine, operating largely at the behest and control of co-defendant Lonnie Wilson. Mr. Brown was desperate for funds after losing his long-time spousal-companion and his job. He resorted to selling cocaine in order to survive.

Instead of stealing the proverbial loaf of bread to feed his family, however, Mr. Brown elected—to his everlasting regret and sorrow—to roll with Mr. Wilson and sell some drugs.

Mr. Brown's offense, viewed impartially, is fairly serious. Society has condemned the use of certain types of drugs (though not others) as inimical to good order. Cocaine is such a drug.

Mr. Brown, who found himself susceptible to the temptations of cocaine, also found the drug to be relatively easy and fairly profitable to sell.   Selling cocaine carries negative consequences for all concerned.

Any sentence of 10 or more years in prison more than adequately promotes respect for the law, provides just punishment for the offense and deters criminal conduct.  The fact that Mr. Brown is now and will be incapacitated for a lengthy period of time, just as he enters his middle years, has impressed upon him and hopefully will impress upon others that trade in contraband is not and will not be tolerated by the United States.

Mr. Brown, though not blessed with a higher education, is a person with a strong work ethic and deep ties to his family and community.  He does not appear to have an anti-social personality.  He abhors violence.  In person he is engaging and voluble.  On balance Mr. Brown's sentence should maximize his opportunities for education, vocational training/re-training and contact with his family and children.  (In that regard, since Mr. Brown is a resident of King County, Washington, he requests a judicial recommendation for placement at the Sheridan correctional facility).

### 3.    Factors Not Addressed In The PSR

Mr. Brown has provided substantial assistance to the United States above and beyond acceptance of responsibility for his own offense role and conduct.  He has cooperated with the investigation and debriefed.  He has provided information about his criminal activities.

**United States v. Brown, et al**
**Case No. 3:06-cr-0006-01**
**Defendant Donald Duray Brown's**
**Sentencing Memorandum**
**Page 6 of 9**

The kinds of sentences available for Mr. Brown include sentencing him to a term of imprisonment below the ten-year minimum upon finding that he has provided substantial assistance.  By cooperating with the Government Mr. Brown has cut all ties he had with former associates in the criminal milieu—at no small risk to both himself and his family members—in order to make a clean break and a new start.

### 4.    Recommended Sentence

At age 43 Donald Duray Brown's story is that of a poor but generally law-abiding citizen who, in desperate need of funds, resorted to helping his friend, Lonnie Wilson, sell some cocaine.  Mr. Brown freely and promptly admitted to his offense conduct and his role in the offense.  The final PSR confirms, by study of Mr. Brown's employment and Social Security records, that for the overwhelming majority of his adult years Mr. Brown has held lawful employment.

Mr. Brown's role and offense conduct at bottom are those of a person succumbing to the easy money temptations of the illegal drug trade under personal exigent circumstances. In light of his cooperation, acceptance of responsibility, history of employment and work ethic, however, Mr. Brown moves and requests that the court mitigate the statutory minimum sentence, and impose a term of not more than eight years.

DATED this 9th day of October, 2006 at Wasilla, Alaska.

Sterling & DeArmond
Counsel for Defendant
Donald Duray Brown

By: s/ Scott A. Sterling
    Scott A. Sterling
    Sterling & Dearmond
    851 Westpoint Drive, Suite 201
    Wasilla, Alaska 99654
    Telephone: (907) 376-8076
    Fax:        (907) 376-8078
Email: scottsterling@alaskalawyers.net
    Bar No. 8706053

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by means of

the ECF system on the 9th day of October, 2006 upon:

AUSA Frank Russo
222 West 7th Avenue
Anchorage, Alaska 99513
Fax:: (907) 271-1500
Counsel for Plaintiff

Randall Cavanaugh
Counsel for co-defendant Lonnie Wilson

By:/s/ Scott A. Sterling