NELSON P. COHEN
United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
(907) 271-5071
(907) 271-1500 (fax)
Frank.Russo@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 3:06-cr-00006-01-JWS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNITED STATES SENTENCING |
| DONALD DURAY BROWN , | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SUMMARY OF SENTENCING RECOMMENDATIONS**

**TERM OF IMPRISONMENT**................................ **135 MONTHS**

**SUPERVISED RELEASE**................................ **5 YEARS**

**SPECIAL ASSESSMENT**................................ **$100.00**

The United States Probation Office ("USPO") has prepared a presentence investigation report ("PSR") in this case. The government does not dispute the factual findings of the USPO.

## I. BACKGROUND

### A. <u>Investigation and Arrest of the Defendant</u>[1]

In January 2005, investigators with the Drug Enforcement Administration began working with a confidential source (the "CS") regarding the cocaine trafficking activities of Donald Duray Brown. The CS had been providing information regarding the cocaine trafficking activities of Donald Duray Brown, among others, in the hopes of receiving consideration for potential state drug charges. The CS identified Lonnie Wilson as a long-time narcotics trafficking associate of Donald Brown.

In several recorded telephone calls beginning in early January, the CS arranged to purchase cocaine from Donald Brown. Through conversations with Donald Brown, the CS learned that Donald Brown was expecting cocaine to arrive via courier at the Anchorage International Airport on January 7, 2005, at approximately 9:00 pm. Investigators advised Airport Police Officer Renee

---

[1] The facts set forth herein are taken from the PSR as well as evidentiary hearings held in this case.

Mackey, who conducted a manifest check for flights arriving at approximately 9:00 pm, for passengers with the last name of Hill, Wilson, or Brown. Officer Mackey did not find any passengers with those names arriving at 9:00 pm.

Later, investigators learned through recorded telephone calls between the CS and Brown that the person bringing drugs was expected to arrive around midnight on a Continental Airlines flight. Investigators, including Officer Mackey, assembled at the airport to determine whether they could identify the courier. The plane arrived at approximately 12:20 am. Officer Mackey spotted Lonnie Wilson as he walked toward the Continental baggage area, with his head lowered to the floor. At around the same time, investigators outside the terminal spotted Donald Brown enter the terminal and meet up with Wilson while Wilson waited for luggage. The two appeared to be conversing. Once Wilson's checked luggage arrived, both Brown and Wilson walked together toward the airport exit.

Officer Mackey approached Wilson and said "excuse me." Wilson stopped and Donald Brown kept walking. When Brown realized that Wilson was not with him, he turned around and noticed Officer Mackey talking to Wilson. Brown appeared nervous. Officer Mackey identified herself, showed her credentials, and asked Wilson if she could speak to him. Wilson replied "yes." During the

conversation, Wilson indicated that he was traveling from Seattle, and showed Officer Mackey identification. Officer Mackey advised Wilson that he was not under arrest and free to leave; Wilson responded, "I know that."

Wilson's identification confirmed that he was Lonnie Wilson – a drug trafficking associate of Donald Duray Brown, according to CS information. Officer Mackey asked Wilson if she could search Wilson's carry-on luggage and his checked luggage. Wilson verbally indicated that Officer Mackey could search both. Officer Mackey then asked Wilson if she could conduct a pat down search of her person. Wilson stated that she could, at which time Officer Mackey conducted a brief pat down of Wilson's person. Officer Mackey felt a hard object in the area of Wilson's lower buttocks, which Officer Mackey believed to be narcotics. Officer Mackey asked Wilson what the hard object was, and he replied "cocaine."

Officer Mackey told Wilson that she appreciated Wilson's honesty, and told him that he was being detained. Officer Mackey then explained that Wilson could voluntarily remove the cocaine or Officer Mackey could apply for a search warrant to remove the cocaine. Wilson stated that he would take the cocaine off his person voluntarily. The investigators and Wilson went to the Airport Police Office,

where Wilson handed over the cocaine, which weighed approximately ½ kilogram. Wilson then gave a statement claiming that he got the cocaine from "Paco". Notably, Wilson claimed that Donald Brown did not know that Wilson was carrying cocaine. In order to facilitate the ongoing investigation, as well as to protect the identity of the CS, the investigators used a ruse to justify the release of Wilson. Wilson was released after giving the statement.

The CS and Brown continued to converse about drug trafficking. Brown told the CS of Wilson's stop at the airport, and that Wilson was not arrested based on a technicality. The CS ordered five ounces of crack cocaine from Brown. On February 2, 2006, investigators observed Wilson drop off Brown near the Home Depot parking lot in midtown Anchorage. Wilson then drove around the parking lot, in an apparent attempt at counter-surveillance. Brown got into the CS's vehicle, and proceeded to hand Wilson six ounces of crack cocaine in exchange for $6,000.[2] During the transaction, Brown received a call from Wilson, who warned Brown of an undercover police vehicle in the parking lot. Brown exited the vehicle and was picked up by Wilson. Wilson's vehicle slowed by an

---

[2] Brown mistakenly gave the CS an extra ounce of crack cocaine.

unmarked Anchorage Police Department vehicle; Wilson and Brown appeared to look at the vehicle.

Brown and the CS later spoke about the fact that Brown had given the CS an extra ounce of cocaine. Brown told the CS that Wilson thought the extra ounce was "lost". The CS agreed to pay for the extra ounce. On February 7, 2006, the CS met Brown outside of the Wilson's residence. The CS paid Brown an extra $1.000, and the two proceeded to discuss future drug transactions. During the meeting, Wilson called Brown, and Brown told Wilson that he was with the CS. The CS and Brown discussed Brown continuing to supply the CS, with the CS paying Wilson while Brown was in Seattle.

Wilson and Brown were indicted in January 2006, and Wilson was arrested on January 27, 2006. Wilson gave a statement to investigators confessing to selling crack cocaine to repay a debt he owed to an out-of-town source. Wilson admitted to dropping off and picking up Brown during the February transaction, as well as pointing out a suspected undercover police vehicle in the Home Depot parking lot. Brown was arrested in late April 2006.

### B. The Plea Agreement and Plea

By plea agreement dated July 11, 2006, Brown entered a guilty plea to drug conspiracy, as set forth in Count 1 of the Indictment, and admitted that he conspired with Lonnie Wilson to distribute approximately 190 grams of cocaine base. See Plea Agreement, pp. 8-9. As a result, the defendant's base offense level would be 34, less three levels for acceptance of responsibility. At the time of the plea, the United States estimated that the defendant was in criminal history category IV, and that his advisory guideline range would be 151-188 months. See Plea Agreement, p. 7. Brown pled guilty on July 18, 2006.

## II. GUIDELINE APPLICATIONS

### A. Base Offense Level

The parties appear to agree that the defendant is responsible for in excess of 150 grams of cocaine base (crack). Pursuant to U.S.S.G. § 2D1.1(c)(3), the defendant's offense level is 34.

### B. Acceptance of Responsibility

The defendant has accepted responsibility for the distribution of in excess of 150 grams of cocaine base. The government recommends a three level decrease in the defendant's base offense level. The defendant's total adjusted offense level

is therefore 31. The USPO calculated that the defendant's criminal history category is III. Accordingly, his advisory guideline range is 135 - 168 months.

### III.   APPLICATION OF 18 U.S.C. § 3553(a)

Application of the factors set forth in 18 U.S.C. § 3553(a) supports the imposition of a sentence within the guideline range. The nature of the offense is serious, and given the defendant's statements to the CS, it appears that the defendant has been involved in the illegal trafficking of cocaine for some time. The defendant's only motive appears to be financial gain. Moreover, two separate informants told investigators that Brown fled to avoid facing the indictment against him. Indeed, despite knowing that there was a warrant for his arrest, he never turned himself in, but instead went to Texas to hide.

### IV.   DEFENSE ARGUMENTS

The defense arguments for a sentence below the ten-year mandatory minimum rely primarily on arguments that the sentencing disparity between crack cocaine and cocaine powder is not reasonable. This argument has been rejected by the Ninth Circuit in similar contexts. See United States v. Harding, 971 F.2d 410, 413-14 (9th Cir. 1992) (applying rational basis review to the mandatory guidelines system); United States v. Dumas, 64 F.3d 1427, 1429 (9th Cir. 1995) (disparate

impact that crack cocaine sentences have had on young black men in America did not trigger strict scrutiny equal protection review because the disparity in sentencing was not "traceable to a discriminatory legislative purpose" on the part of Congress).  Moreover, in rejecting a defendant's argument for a downward departure from the mandatory guidelines based upon the disparity in sentencing treatment of crack and powder cocaine, the Ninth Circuit stated that:  "It is not the province of this Court to second-guess Congress's chosen penalty.  That is a discretionary legislative judgment for Congress and the Sentencing Commission to make."  United States v. Berger, 103 F.3d 67, 71 (9th Cir. 1996) (quoting United States v. Cherry, 50 F.3d 338, 344 (5th Cir. 1995).

Next, the defendant contends that criminal history category III over-represents the defendant's criminal history.  It is notable that the government estimated that the defendant would be in criminal history category IV in the indictment, due to numerous arrests that span over 20 years.  Because many of the defendant's convictions were driving related, they did not count in his criminal history score.  Nevertheless, the number and frequency of arrests, citations, and convictions support a criminal history category of III.

Finally, the defendant claims that he is owed some benefit due to his "substantial assistance to the government." This is not the case. In fact, the defendant's debriefing provided information inconsistent with his audiotaped statements he made to the CS during the investigation. Moreover, other information the defendant provided was deemed not truthful, as it was controverted by information obtained during the course of the investigation as well as information provided by other sources. Thus, the defendant is not entitled to a substantial assistance benefit.

## V. CONCLUSION

The United States requests a sentence of 135 months, followed by five years of supervised release. A $100 special assessment is mandatory.

RESPECTFULLY SUBMITTED this  10th  day of October, 2006 in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ Frank V. Russo
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
(907) 271-5071
(907) 271-1500 (fax)
Frank.Russo@usdoj.gov

I declare under penalty of perjury that a true
and correct copy of the foregoing
was sent to the following counsel of record on
October 10, 2006, via:

    (X) Electronic case filing notice

Scott Sterling, Esq.

Executed at Anchorage, Alaska, on October 10, 2006

s/ Frank V. Russo_____
Office of the U.S. Attorney